We presented two issues in this case, one certified by the district court and one uncertified. And if it's okay with the court, I'd like to focus or start this morning on the uncertified issue, which concerns the trial court's admission of the prior act sexual evidence at trial against Mr. Licon. I mean, there are two big problems with that. Although the evidence was old and it was probably extremely prejudicial, but where do we have the – this is an AEDPA case and there's just no Supreme Court constitutional authority. Is there for the proposition that past act evidence of this kind is a due process violation? I think there is, Your Honor. With respect to specifically propensity evidence, I think Your Honor is probably right. In Michelson, as I set forth in my brief, they touch upon the issue, but then in Estelle, they specifically say it's an open question and don't decide it. But in Payne v. Tennessee, the Supreme Court clearly said that if evidence is so inflammatory, so prejudicial that it renders the trial fundamentally unfair, then the due process clause provides an avenue of relief for Licon. Well, they put it on in a fairly – I mean, in the mildest way, it could have been put on, I think. I mean, they certainly didn't put it on in an inflammatory way. They just asked a question and left it there, with regard to both young women. But before you get to that, in Payne, you say, of course, was that a holding in Payne? It wasn't the actual holding, the issue in Payne. Well, you see, but that's what this AEDPA law clearly established. It says it can't be dicta, it's going to be a holding. Well, I don't think it's dicta. It was not a holding. It was not the actual holding. That case concerned the use of victim impact evidence. But it was part of the analysis the Court used with respect to whether this victim impact evidence could be admitted. So it wasn't just something the Supreme Court said in passing. It was really a rule that they stated in that case that played a part in their ultimate decision. And it was also pretty relevant here, unlike a lot of the times when people go into past act evidence. I mean, you had a situation where there was a specific element here of what this person's intent was with regard to this child. And it was an awfully good indication of what it might have been that he had engaged in this kind of activity in the past. I would have to agree that it did have some relevance towards the second prong of that misdemeanor 647 count, I believe, count 3 of the complaint. The problem with the admission of that evidence is the government had all the evidence it needed for that count and more in the form of that statement that Mr. LeCon allegedly made when he was in front of the girl, I want to F this little girl. And when this issue was actually brought up. Well, first of all, it didn't have to be believed. First, second of all, it could have been regarded as metaphorical or something else. I mean, you know, unless you know what the context was. Sure. Sure. When this issue was brought up in the form of a judgment for acquittal after count 3, the prosecutor discussed the evidence that she believed supported that count. And the prosecutor said it was a no-brainer. It did not reference at all the testimony of the two women, said it's a no-brainer. And quoted the statements attributed to Mr. LeCon when he was in front of the little girl. And so Your Honor is right that possibly the jury could have not believed that he made that statement or thought that it was taken out of context. But I think that the prosecutor certainly believed that that statement was sufficient to meet that second prong of the third count of the complaint. And I just can't focus enough on the fact that this couldn't have been more inflammatory evidence. Well, it could have been, only in that they couldn't have gone into more detail. As I said, it was put on flatly. It was sanitized some compared to what happened in the pretrial hearing where the judge addressed that testimony. But having the jury hear about someone committing these acts over such a period is going to just turn a jury against a defendant, no matter what the facts of this case are. And I would submit to the Court that this just wasn't evidence that needed to be admitted. The government didn't need this evidence. Well, what was the defense anyway? Well, there was sort of a hybrid defense. He wasn't there. He wasn't there and he was there. It was sort of he wasn't there, but if he was there, he was kind of crazy or intoxicated. The defense was sort of a combination of those two things. He was acquitted of the battery count. There was no evidence that he ever touched the young girl. He was convicted of the 647 count. But 11 of the 12 years of this sentence came from the issues concerning what happened with Officer Fox, with the terrorist threats and the alleged threats. What was his defense to that, that he didn't talk to Officer Fox, he didn't say those things to Officer Fox? He testified that he didn't say those things. And his attorney essentially said, argued that even if he did say those things, he was in a state of mind that he couldn't have had the intent to specifically threaten the officer. And that kind of segues into the first issue, which concerns the failure of the attorney to call the two witnesses who Mr. Lacan claimed were going to support his version of what happened at the donut shop. But this is what Justice Reinhart started before. We have no idea what they were going to say, where they were going to say he was. I mean, you saw in the last case, because we knew what they were going to say, we could be intelligent about it. We have no idea what they were going to say. Sure. The record is very light with respect to who the witnesses were, what they were going to testify to, and how that would have affected the trial. But if we can get past that, I think it would have been useful in the case, because it would have gone to the credibility of Officer Fox. Again, 11 of the 12 years that Mr. Lacan is now serving are due to the felony counts connected to his dealings with the police officer. When were you appointed in this case? I'm sorry? When did you come into this case? I came into this case when the COA was granted by the district court. You had nothing to do with the trial. No, I did not, no. It would have been helpful to impeach the credibility of Officer Fox. His testimony that Mr. Lacan made these threats and he felt threatened by them and that Mr. Lacan seemed to be making them in a legitimate and rational manner is responsible for him still being in prison today. If counsel had these witnesses available and Mr. Lacan hasn't made a great record that they were available and what exactly they would have said, but the government hasn't contradicted what his allegations are. He's a pro se litigant, obviously from the petition. He's not well schooled in writing or presenting an issue. And so if we can give him the benefit of the doubt, which pro se litigants normally are entitled to, there is an issue concerning why these two witnesses who would have, according to Mr. Lacan, contradicted Officer Fox were not called at trial. Did he was pro se in the district court? Yes, he was. Yes, he was. If the court has no further questions, perhaps I'll... Do you have any suggestions for how we can... I mean, we don't know what the witnesses would have said. Perhaps the best thing for the court to do with respect to the first issue is to remand this to the district court for an evidentiary hearing or at least further findings with regard to who these people exactly were, what their testimony would have been, and then the court can make findings as to whether that would have had a material effect on the case or not. Mr. Lacan was without resources to do that. I certainly would assist him in that regard. Has Mr. Lacan ever said where he was? He said he was arrested by a friend's house. He was running around the corner from a friend's house. He was being chased, and that's where he was apprehended. By Mr. Fox or somebody else? I think by Mr. Fox. It really doesn't make any difference where he was apprehended. No, but I think if you read his allegations in the Section 2254 petition, I think what he's trying to say is that he would have given a different account of what happened or the two witnesses would have given a different account of what happened. Well, didn't the defense counsel in the trial court look into those two witnesses? Well, according to Mr. Lacan, they were present at the courthouse and ready to testify, and I would assume from the record that the counsel knew they were there and... Had a decision not to call them? Perhaps. It's not clear from the record if that's the case or not, but one could make that inference. But I'm concerned as well about this gentleman's ability to give this Court a sufficient record to really make this determination in a knowing fashion. So I think an appropriate remedy prior to issuing an opinion on this case might be to remand this to the district court, have the district court appoint counsel  that has to make a specific showing of some kind. Well, I agree. And he made the allegations in the petition. He made additional allegations in his objections, which the district court noted. And so I think I've talked to him. I think he did his best, and his best wasn't great. What happened in the district court? Did he testify? No, no. It was just submitted on the pleadings. He filed the 2254. The government responded. He filed objections. And Judge Burns in San Diego issued a ruling based upon the pleadings. There was never any hearing. If the Court has no further questions, perhaps I'll reserve a minute or two for rebuttal. All right. Thank you very much. May it please the Court, Ron Jacob, Deputy Attorney General for Appellee-Respondent. As this Court held in Dows v. Wood, Petitioner, Appellant has the burden to substantiate his allegations, either with citations to the record or with supporting affidavits or declarations. And, in fact, the situation in Dows was exactly what we have here. He filed the petition. The State, I assume, filed a response. And the district court decided the case based on the petition and the response. Yes, Your Honor. As counsel stated, it was a decision based on the pleadings. Does that mean the district court said if everything was in the pleadings were true, he wouldn't be entitled to relief? Yes, Your Honor. But as to this particular claim, in addition, the district court also found that it was unsubstantiated and unsupported by any declarations or ---- Well, when you just file pleadings, you don't have to file declarations, do you? That comes at a later stage in the proceedings. Well, I disagree with that, respectfully, Your Honor. Under the authority of Dows, Dows says allegations must be supported by references to the record or affidavits or declarations from the supposed witnesses. We, unlike ---- At the time of pleading, or do you get to do that? I can understand you have to do that at some point. But do you have to do it when you file your pleadings? Well, a reasonable inference would be that it would be either at the time you filed the pleadings or at least prior to the district court issuing its decision. Didn't the court of appeals say or make a finding that he did supply to counsel with the names of available witnesses, but ---- and their expected testimony, but when they were interviewed by counsel, they didn't support Appellant's version? No, Your Honor. I don't believe so. Wasn't that a finding in the court of appeals? No. I believe the state court of appeal in denying the habeas was reiterating the allegations by ---- Allegations he made. Yes. But they were not supported like the petition here. They were not supported by anything. We don't even, unlike Luna v. Cambria, we don't even know if these people exist. We don't know if they did exist, if they were available to testify at trial. Well, isn't there something in the record that in case they met with these people named Flemings, met with the counsel, trial counsel? No. No, Your Honor. They met with the investigator several times, and there was a Marston hearing. Those are the same people, no? Well, I'm at a disadvantage because those Marston records are sealed to us, unless a Marston issue is raised on appeal. I don't know what happened in the Marston hearing. I'm sorry, Your Honor. But under Dow's, the district court must still be supplied with some substantiation if that did indeed occur in the Marston hearing. It was incumbent on Petitioner to cite to that in some way. He doesn't need to be an attorney or be artful about it, but he could at least say. Well, I thought we had a decision at least, I'm not sure which context it was in, but before you dismiss a pro-PERS pleading, you're supposed to, the court's supposed to advise him of what his failings are or what he's supposed to do. I mean, if he just walks in and files a pleading, and you dismiss it because he doesn't have any affidavits, I think the district court's supposed to tell him, look, filing a pleading isn't enough. We're going to dismiss this unless you file affidavits. Your Honor, I know that this Court previously held that in terms of a stay-in abeyance, that the district court should give certain advice to the defendant, which the Supreme Court has since disapproved of. No, this wasn't on the State, and I know those cases do. But this is, these are different cases. It didn't have to do with, you know, whether you've exhausted your State remedies. It had to do with the merits of cases where there's a dismissal because of problems in pleading or in, you know, not following the right procedures. And I think I wrote, it was a long time ago, said you can't just with a pro-PER just dismiss without telling him what it is that's wrong or missing. Your Honor, this is not an instance of just some defect in the pleading. It's an accusation that has absolutely no support anywhere. And the district court ---- Also, there was an R&R, right? And presumably, he could at that point have said it. I mean, he knew at that point what his problem was. Yes, Your Honor. And he filed objections to it. And he could have filed and said I want to submit something, but he didn't. Yes, Your Honor. That's a very good point. So he had advance notice with the R&R what the district court's concerns were. Again, in this case, unlike the prior case this Court just heard, we have no clue if these people even exist or what they would say. They are also not really alibi witnesses. All appellant alleged in the petition was that they would, quote, clarify the location of his arrest. That does not necessarily mean they would contradict Officer Foss, Officer Fox. It should be noted that two other officers initially detained appellant outside the donut shop, and then subsequently, Officer Fox responded and formally arrested him. We don't know if appellant is saying these people would testify as to the detention or as to the arrest. And second of all, it has no bearing on either of the crimes that occurred prior or after what these phantom witnesses would have said. And we disagree with counsel's suggestion that this be remanded for an evidentiary hearing, because appellant had the opportunity to develop these facts at the State level and he's not entitled, and he did not do so, and therefore, he would not be entitled to an evidentiary hearing here. We can't just allow defendants to pull names out of the air and just with absolutely zero substantiation say, John Doe should have been called because John Doe would have exonerated me. And which the ---- The Petitioner does in his Petition for Certificate of Availability refer to the Morrison hearing and refer to the question I was going to ask you about the Morrison hearing, which is that he tried to present a signed declaration from Elvia Fleming and Arnold and he said he has letters for you here that the two witnesses had information. Now, what I was going to ask you was, do we have those letters, or do you know anything about those letters? I don't, Your Honor. And perhaps it's because it was in the context of a Marsden hearing. But again, if he has these letters, why doesn't he? But he presented them this time. Excuse me? He hasn't presented them yet. Not that I'm aware of, Your Honor. So based on the authority endows, this Court should affirm the district court judgment in that regard. In addition, it's also under blackledge a vague and conclusory allegation. He needs to tell a little more than it would clarify. Now, countering our argument, counsel cites in his reply brief the Petitioner's case of Eldridge v. Block, but that's an opposite. That dealt with a Section 1983 civil rights action, not a habeas petition. And, of course, the rules are much stricter for an extraordinary remedy of issuing a writ of habeas corpus and these requirements of Section 2254. And in addition there, in Eldridge, the Court only discussed the issue of the pleading or allegation being vague. There was not an issue there that it was completely unsupported. If I could move on to the non-certified issue. As the Court has already pointed out, and the district court pointed out, there is no U.S. Supreme Court precedent stating that propensity evidence violates a defendant's due process right. And, in fact, this Court in LeMay found Evidence Code Section 414, which mirrors California Evidence Code 1108 regarding the admission of prior acts, to satisfy due process, since it allows a weighing of the relevance and the probative value. That's exactly what happened in this case, what the trial court did, and also what the court of appeal did on appeal. The appellant's counsel wants to divine from pain that perhaps the propensity of evidence could violate due process. But the important thing here is we're not looking at this as an appeal. This is a habeas, and we have to look at it under ad deba. And there has to be clearly established Supreme Court precedent that the State Court opinion is either contradicts or is unreasonable with. And even with counsel's argument about the pain case, that does not amount to clearly established Supreme Court precedent. Let me make it clear to you that because this is an uncertified issue, we wouldn't just decide it without notifying you that we are going to consider it and give you an opportunity for briefing. Okay. Thank you, Your Honor. So the discussion we've had here doesn't mean we're going to decide the issue. Okay. Once you're all here and having fun, we thought we'd let you talk about it. I appreciate that, Your Honor. You do concede that this is inflammatory material and certainly would have a prejudicial spillover with respect to the charges of threatening the police officer and so forth and so on. No, I do not, Your Honor, if I may explain. It's not inflammatory. No, Your Honor, if I may explain. Yes, go ahead. It's not unduly inflammatory. It is regular inflammatory. Well, any incriminating evidence is prejudicial, essentially. But the point under Section 1108 of the actually 352, which Section 1108 is subject to, is the court has to balance whether the potential, the relevance is substantially outweighed by the risk of prejudice. And as the court has already pointed out, there was great relevance in this evidence because of the charge of the child annoyance. It was an element that the prosecution had to prove that appellant had a unnatural sexual interest in the child. Well, for example, they put on two of them. They didn't need two. One of them would have done, right? Perhaps. But can we say the court of appeal was unreasonable? Perhaps in the first instance, this Court sitting on appeal or at trial might feel that one is enough. But, and perhaps it would, reasonable minds to differ. But two is not unreasonable. There was great relevance because the, without the comment that appellant made, his actions were rather innocuous. So the comment using the F word was the most important evidence as to that count. And of course, that word is used colloquially in many different senses these days. So it was important for the prosecutor to show that he really did have a sexual interest. There was a sexual intent behind the comment. It was far away in time. And it was, I don't know if you can say it was more egregious, but it was somewhat because it was essentially incest. It was sort of a different nature, too. So it was, I mean, perhaps, I mean, it really was, I mean, except for the fact that, as I said, it was produced fairly flatly, as prejudicial as you can get. Well, because the facts were different, that actually mitigates against prejudice. If, in other words, if he did the exact same thing to a little girl on her bike, trapping her in the past, and they put in that evidence, that, we submit that would be much more prejudicial, that the fact that it's not quite the same and it's not required to be the same or a mess. No, it was probably less prejudicial in the sense of prejudice, prejudice meaning not just tending to prove the facts, but tending to think this is a terrible guy worse than even what he did. Well, and It wasn't even punished for the previous acts, which would further inflame the situation. Well, to finish my initial answer, Your Honor, ask me, there was a limiting instruction given in this case, and that's evident in the court of appeals' opinion, limiting the jury's use of this evidence. Therefore, the jury could only use it for the child molest count and was not permitted so there couldn't have been a spillover effect. It's presumed that the jury followed the court's instructions. There's no indication rebutting that presumption. And with that limiting instruction, appellant's argument regarding the spillover effect into the felonies is not persuasive. What I'd like to just come back to as I finish up is that, again, as the court of appeal even noted in its decision, this is a close issue. They used those terms. So reasonable minds could definitely differ. However, it's our position it cannot be said that the State court's opinion on this issue was unreasonable in light of Supreme Court precedent. And then, of course, the backdrop to all that is the Supreme Court has never held propensity that evidence violates due process. Unless the Court has any further questions, I'd be prepared to submit. Thank you, Your Honor. I'll be very brief, Your Honor. Do you have the specifics? Did the appellant provide to you the specifics of the funding's proposed testimony? No, Your Honor, no. You don't have it either? No, I do not. Even though it's not in the record. Correct. Judge Reinhart, the first case you talked about, a common-sense approach perhaps might be in order. I think this is a case where a common-sense approach is exactly what we need, which is to remand this case to the district court so that Mr. LeCon can have the help he needs to generate a record. But in all this time, he's never furnished details even to you. I don't think he's been able to, given our communications, what happened previously with counsel. I don't know, but I have spoken to him. I just don't think he's able. What about this letter that was proposed? I mean, this Marston hearing thing was a little delicate, and I wasn't aware that even in this proceeding it wasn't public. But there is a reference to it, and it does mention a letter. And what about that? I don't have the letter either. I'll certainly look for it after today's hearing. But I don't have that letter either. But if that gives us some more definitive information about who these people are. Well, if the Marston hearing is in the record, you'd think the letter would be in the record with it, but maybe not. You would think so. Did you say earlier that you didn't think he'd be able to help you in that respect? Well, I think if I went and saw him in prison and sat down in front of him and we talked, I think I could. But I believe he had a stroke about six months ago, and his letters have gotten progressively worse to the point where I can barely read them. So I think the fair thing to do in this situation is to remand this case to the district court, give Mr. LeCon an attorney who can try to establish the evidence this court needs to make a determination. If the Flemings don't exist and they weren't at trial to contradict the testimony of Officer Fox, then he loses. If the Flemings did exist and had probative, relevant testimony to give with regard to what happened in Officer Fox's conduct, then that's something this court should be aware of and should consider as well as the district court in the context of this petition. Finally, with regard to the uncertified issue, Payne v. Tennessee doesn't stand alone with regard to this rule that evidence that's so inflammatory and so prejudicial can render a trial fundamentally unfair. On page 29 of my opening brief, I talk about Dawson v. Delaware, where Justice Thomas, in a dissent, says, We have made clear, in particular, that when a state court admits evidence that is so unduly prejudicial that it renders the trial fundamentally unfair, the due process clause of the 14th Amendment provides a mechanism for relief. So at least as far as Justice Thomas is concerned, this is a rule that's been established, I believe, originally in Payne. And so I think as far as the clearly established problem we always have with the deck, I think we can get past it, at least with respect to the overall fundamental fairness of the admission of evidence. Thank you. OK, thank you, counsel. Thank you very much, Your Honor. Case discussed and will be submitted.
judges: Reinhardt, Berzon, Miner